# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* A.C. and D.C.

No. 17-1094 (Kanawha County 16-JA-179 and 180)

FILED

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.C., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's November 21, 2017, order terminating her parental rights to A.C. and D.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights, instead of imposing a less-restrictive dispositional alternative, and denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2016, the DHHR filed an abuse and neglect petition that alleged child D.C. was born with numerous controlled substances in her system, including "high levels" of cocaine and methamphetamine. The petition further alleged that petitioner tested positive for amphetamine, methamphetamine, and cocaine at the time of birth. Additionally, the DHHR alleged that, five minutes after the child's birth, petitioner checked herself out against medical advice to smoke. After an extended period, petitioner returned "extremely high." According to the petition, when child A.C. was born in 2011, that child was addicted to drugs and, thereafter, petitioner "absconded from" services offered by Child Protective Services. Further, the petition alleged that petitioner admitted to a long history of substance abuse, including twelve years of methamphetamine use. Finally, the petition alleged that petitioner failed to properly provide the children with necessary food, clothing, supervision, and housing. Thereafter, petitioner waived her right to a preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In March of 2016, the circuit court held an adjudicatory hearing. Petitioner testified on her own behalf and admitted to a history of substance abuse and the presence of drugs in her system and that of D.C. at the time of the child's birth. As such, the circuit court adjudicated petitioner as an abusing parent. The circuit court further granted petitioner's motion for a post-adjudicatory improvement period. Pursuant to the terms of the improvement period, petitioner was required to participate in long-term substance abuse treatment, random drug screens, parenting education, adult life skills education, and supervised visits with her children. Thereafter, the circuit court held a series of review hearings and extended petitioner's post-adjudicatory improvement period. During this period, petitioner initially entered a residential substance abuse treatment program through the Renaissance Program at the Prestera Center, although she was discharged from the program in October of 2016 for violation of the program's rules. She then entered a second substance abuse treatment program before eventually entering a third substance abuse program at Rea of Hope.

In June of 2017, the parties appeared for a dispositional hearing. Petitioner moved for a post-dispositional improvement period, and both the guardian and the DHHR recommended granting the same. After finding that she substantially complied with the terms and conditions of her post-adjudicatory improvement period, the circuit court granted petitioner's motion for a post-dispositional improvement period and required that she continue her substance abuse treatment with Rea of Hope, obtain and maintain appropriate housing and verifiable employment, participate in random drug screens, and participate in unsupervised and overnight visitation with the children.

In August of 2017, the program care manager at Rea of Hope sent the circuit court a letter that indicated that petitioner would not be attending Phase II of the program. According to the letter, despite petitioner's initial compliance with the program's requirements, the program care manager "noticed a significant change in her overall attitude" in the weeks preceding the correspondence. As a result, petitioner "chose[] to move back to her previous home" and was officially discharged. Moreover, according to a DHHR court summary, petitioner had "not been fully compliant" since moving back to her prior residence. According to the summary, petitioner stopped complying with drug screens and ceased communication with the DHHR as of August 18, 2017. During her final meeting with DHHR personnel, it was suspected that petitioner was under the influence, but this was never confirmed due to her lack of screening. The DHHR also indicated that petitioner stopped calling the children, as she had consistently done in the past. Accordingly, the DHHR recommended termination of petitioner's parental rights. At a review hearing in September of 2017, which petitioner did not attend, the circuit court terminated petitioner's post-dispositional improvement period due to her noncompliance.[2]

In October of 2017, the circuit court held a dispositional hearing. Petitioner failed to attend this hearing, but was represented by counsel. The circuit court found that petitioner failed to substantially complete her post-dispositional improvement period. The circuit court further found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. As a result,

---

[2]Petitioner was represented by counsel at this hearing.

the circuit court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court finds no error in the circuit court's refusal to impose a less-restrictive dispositional alternative. On appeal, petitioner predicates this assignment of error upon her argument that she successfully complied with the services offered and reached a level of functioning sufficient to care for her children. We disagree. While petitioner is correct that she complied with the terms and conditions of her improvement period for an extended period and demonstrated improvement in certain areas, petitioner's argument ignores the fact that, prior to the conditions of abuse and neglect being remedied, she entirely abandoned the proceedings. The record shows that in August of 2017, petitioner had her last contact with the DHHR during a visit to her home in which the DHHR employee suspected petitioner was under the influence. This could not be confirmed, however, because petitioner refused to submit to any drug screens during the final months of the proceedings, despite the fact that her failure to comply with said screenings precluded her from exercising visitation with the children.

We have previously held as follows:

"At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return

---

[3]The children's respective fathers' parental rights were also terminated below. According to respondents, the permanency plan for the children is adoption in the current foster home.

of the child." Syl. Pt. 6, *In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 3, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). At the conclusion of petitioner's post-dispositional improvement period, the circuit court specifically found that she failed to substantially comply with the terms and conditions thereof. On appeal, petitioner fails to establish that this finding was an abuse of discretion, especially in light of the overwhelming evidence of petitioner's total lack of compliance with any services from August of 2017 until disposition. Further, while petitioner argues that she substantially corrected the conditions of abuse and neglect, we do not agree. As noted above, after petitioner chose to discharge from her substance abuse treatment instead of moving on the next phase, a DHHR worker suspected petitioner was under the influence and was ultimately unable to determine if this was the case because of petitioner's willful refusal to submit to drug screens. As such, there is simply no evidence that petitioner remedied the conditions of abuse and neglect such that she should have been entitled to the children's return. On the contrary, this evidence supports the circuit court's termination of petitioner's parental rights.

Based on the evidence outlined above, the circuit court specifically found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child;

As set forth above, petitioner failed to follow through with the case plan and other rehabilitative efforts when she abandoned the proceedings before remedying the conditions of abuse and neglect. Further, West Virginia Code § 49-4-604(b)(6) permits circuit courts to terminate parental rights upon these findings. Moreover, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

4

Finally, the Court finds no error in the circuit court's denial of post-termination visitation. According to petitioner, the circuit court should have granted post-termination visitation because she had a bond with the children and visits went well. We do not agree.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Here, the record shows that visitation was not in the children's best interest. Petitioner failed to remedy the conditions of abuse and neglect and further failed to exercise visitation with the children for an extended period because she refused to submit for drug screens. Further, the DHHR reported that A.C. suffered from behavioral issues as a result of visitations and that the child's "behavior . . . improved since the visits . . . stopped." Accordingly, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 21, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker